**Commonwealth v. Staffen**

*James M. Jacobs, Jr., assistant district attorney,* for the Commonwealth.

*Joseph B. Policicchio,* for defendant.

CASCIO, *J.*, December 18, 1992—This case is before us on Commonwealth's petition to assess restitution. The petition results from a bill received by the Somerset District Attorney's office from the Somerset Borough Police Department for salaries paid to two borough police officers while they attended a jury trial that commenced January 16, 1992 and concluded January 17, 1992. James M. Jacobs, Assistant District Attorney, subpoenaed the officers, Bradley Cramer and Anthony McKenzie, for the trial. McKenzie testified during the first day of the trial and Cramer did not testify at all. Both officers were present for both days of the trial.

At the conclusion of the trial, the jury found the defendant guilty of driving under the influence while alcohol by weight in the blood is .10 percent or greater,[1] and not guilty of driving under the influence to the extent she was incapable of safe driving.[2] The court found defendant guilty of the summary charge of failing to drive within a single lane,[3] and not guilty of the summary offense of failing to notify the Department of Transportation of her change of name or address.[4]

On January 27, 1992, the Borough of Somerset submitted a bill to the Somerset County District Attorney's office for $630.10, the salary paid to Cramer and

---

1. 75 Pa.C.S. §3731(a)(4).
2. 75 Pa.C.S. §3731(a)(1).
3. 75 Pa.C.S. §3309(a).
4. 75 Pa.C.S. §1515.

McKenzie for the two days at trial. The amount represents eight and one-half hours each for January 16, 1992 and seven hours each for January 17, 1992 at $20.326 per hour. The Commonwealth then filed the petition which is the subject of this memorandum.

A hearing on Commonwealth's petition was held September 14, 1992. Testimony at the hearing established that Trooper Craig Bowman of the Pennsylvania State Police had originally stopped defendant in Somerset Borough, and that, in response to Bowman's request for assistance, Cramer and McKenzie reported to the scene of the stop. These officers arrived after Bowman had conducted field sobriety tests on the defendant. Testimony at the trial established that McKenzie then followed Bowman as he transported defendant to the hospital to have blood drawn. McKenzie was present when the blood was drawn and thereafter followed Bowman as he transported defendant to the state police barracks. Although Cramer was involved to a much lesser degree, both he and McKenzie were subpoenaed for the trial.

At the hearing, in addition to contesting the appropriateness of taxing these salaries as costs of prosecution, defendant contended that the officers could have been "on call," thereby eliminating the need to pay both officers for two full days. Ronald Stern, Chief of the Somerset Borough Police Department, testified that if the officers would have been on call, several problems could have arisen including the officers not being available when needed, or not having their appropriate uniforms or weapons if called to duty. Stern also testified that the officers' contracts required that if they were subpoenaed to testify, they would be paid at the overtime rate of pay rather than at their regular rate of pay. In addition, Stern testified that because the officers were

able to work their regular shifts on the days in question following their appearance in court, the borough also paid them for working those shifts at their regular rate of pay.

Stern also testified that this was the first time he had ever submitted this type of bill to the district attorney's office.

James M. Jacobs testified that after analyzing the factual questions in the case, he concluded that he wanted both McKenzie and Cramer present at the trial. He also supported Stern's contention that the "on call" basis would not be appropriate because he could not guarantee that the officers could get into court quickly enough after being called, and, furthermore, he wanted the officers available during the entire trial in the event that he would have to call them for rebuttal.

## DISCUSSION

42 Pa.C.S. §1726,[5] entitled "Establishment of taxable costs," provides that

"[t]he governing authority shall prescribe by general rule the standard governing the imposition and taxation of costs, including the items which constitute taxable costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters...."

The term "governing authority" is defined in 42 Pa.C.S. §102[6] as either (1) the Supreme Court; or (2) any

---

5. Act of July 9, 1976, P.L. 586, No. 142 §2, eff. June 27, 1978.

6. Act of July 9, 1976, P.L. 586, No. 142, §2, effective date June 27, 1978. As amended 1978, April 28 P.L. 202, No. 53, §10(1), effective June 27, 1978; Act of July 20, 1979, P.L. 157, No. 52 §1, effective in 60 days; Act of October 5, 1980, P.L. 693, No. 142, §§214, 501, effective in 60 days.

agency or unit of the unified judicial system exercising a power or performing a duty pursuant to section 1721 (relating to delegation of powers).

16 P.S. §1403[7] states that

"[a]ll necessary expenses incurred by the district attorney or his assistants or any officer directed by him in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime, upon approval thereof by the district attorney and the court, shall be paid by the county from the general funds of the county. In any case where the defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant."

The law governing costs of prosecution charged against the defendant has evolved from a narrow construction. In 1934, before section 1726 was enacted, the standard for assessing costs was more difficult to meet. In *Commonwealth v. Baughman,* 23 D.&C. 364 (1934), the court held that expenses incurred in guarding a defendant who was hospitalized could not be taxed against a defendant as costs of prosecution because of the narrow interpretation of 19 P.A. §1223,[8] the predecessor to section 1726. The *Baughman* court reasoned that the term "costs" included only items connected with actual presentation of testimony before the court. *Id.* at 368.

However, since the enactment of section 1726, the Superior Court has recognized that the courts of this Commonwealth have adopted a more expansive view

___

7. Act of June 29, 1923, P.L. 973, §1.
8. Act of June 29, 1923, P.L. 973, §1.

of the costs taxable against a convicted defendant. See generally, *Commonwealth v. Davy,* 456 Pa. 88, 317 A.2d 48 (1974) (cost of extraditing defendant from Texas to Pennsylvania in order to obtain his presence at his revocation of probation hearing was properly assessed against the defendant); *Commonwealth v. Reese,* 2 D.&C.3d 396 (1977) (monies expended by a drug enforcement officer in the purchase of marijuana were recoverable as costs of prosecution). *Commonwealth v. Coder,* 490 Pa. 194, 415 A.2d 406 (1980) (costs accruing from a change in venue were properly assessed against the defendant).

In *Commonwealth v. Cutillo,* 294 Pa. Super. 560, 440 A.2d 607 (1982), the Superior Court upheld a lower court's ruling that the expenses incurred in guarding a defendant during his hospitalization from gunshot wounds received during commission of the criminal offenses were properly charged against the defendant as costs of prosecution. The Superior Court has clearly recognized the courts' more expansive view in assessing costs of prosecution. Nevertheless, the court has also recognized the effect its holding could have on similar cases in stating that "[w]e are not, however, giving leave to the lower courts to assess any and all possible costs against a convicted defendant." *Id.* at 564, 440 A.2d at 609. The Superior Court then stated the standard to be used when determining which costs are assessable against a convicted defendant.

"In determining the taxability of specific costs of prosecution, the trial courts must carefully examine each case *in toto.* Assessable costs are those which are necessary for prosecution when considered in light of the peculiar facts and circumstances of each case ... Those costs which fall within the ambit of usual services provided may not be taxed against a convicted defendant

absent extraordinary circumstances." *Id.* at 564, 440 A.2d at 609. (emphasis in original)

The Commonwealth contends that the officers were necessary witnesses to testify to factual issues concerning the conduct of the arresting officer and the defendant after the defendant was apprehended.[9] Fees paid to witnesses may be charged to the defendant. *Commonwealth v. Coder, supra.*

"If the Commonwealth demonstrates by a preponderance of the evidence that all the witnesses were reasonably necessary to prove the charges for which the appellant was convicted, the Commonwealth may recover the expenditures arising from their attendance at the trial." *Id.* at 202, 415 A.2d at 410.

Therefore, in order to recover these costs arising from the attendance of these witnesses at trial, the Commonwealth has the burden of demonstrating, by a preponderance of the evidence, that these witnesses were reasonably necessary to prove the charges for which the defendant was convicted, and that they provided services to the Commonwealth which fell outside the ambit of usual services.

In order to convict defendant of driving under the influence while alcohol by weight in the blood is .10 percent or greater, the Commonwealth was required to prove that defendant drove a motor vehicle and that she was doing so while the alcohol by weight in her bloodstream was .10 percent or greater. At the trial, Trooper Bowman testified that he saw defendant driving the vehicle. Lori Musser, a laboratory technician at Somerset Community Hospital testified that she drew de-

---

9. Although this issue essentially took on a life of its own during the trial, it was at least marginally germane to the case on the limited issue of credibility.

fendant's blood on the evening of her arrest. Ralph Plankenhorn, a forensic chemist for the Pennsylvania State Police, testified that he performed the blood analysis, which resulted in a blood alcohol reading of .1970 percent. This is all the evidence reasonably necessary to meet the Commonwealth's burden of proof. Neither McKenzie's nor Cramer's presence in the courtroom, nor either officer's testimony, was required to convict defendant of this charge. In fact, none of McKenzie's testimony had any bearing on this charge.

Defendant was acquitted of driving under the influence to the extent she was incapable of safe driving. Trooper Bowman testified that, in his opinion, based upon his observation of her at the scene, her failure of the field sobriety tests, as well as his observation of her driving, defendant was incapable of safe driving. McKenzie also testified that, in his opinion, based upon his observations of defendant at the scene, defendant was incapable of safe driving. For unknown reasons, the jury determined that the Commonwealth failed to meet its burden of proof on this charge. The fact that defendant was acquitted of this charge demonstrates that the testimony of neither officer was necessary to the conviction on this charge because no conviction occurred.

The trial judge found defendant guilty of the summary charge of failing to drive within a single lane. Trooper Bowman testified that as he followed defendant, she crossed the center line of the highway two times. Neither McKenzie nor Cramer could add to the testimony against defendant on this charge because they had not witnessed defendant's operation of her vehicle.

We must also question the assistant district attorney's reasoning in requiring Cramer and McKenzie to be present at the trial for two full days. The only testimony

either officer could have given which was pertinent to the case against the defendant was McKenzie's opinion that defendant was under the influence of alcohol to the extent that she was incapable of safe driving. This testimony lent nothing to the proof of the charges of which defendant was convicted because it was, at best, cumulative to Bowman's testimony. In addition, no rebuttal testimony was offered by either officer.

The only other way possible to justify ordering the defendant to reimburse the borough the amount of McKenzie's salary, which is substantially more than the usual witness fees which may be collected by a municipal police officer for appearing in court ($5 per day plus $.07 cents per mile for travel), would have been to qualify him as an expert witness. The fees of expert witnesses, which are necessary and reasonable to the successful prosecution of the case, have been found to be appropriate costs of prosecution which may be assessed against a convicted defendant. See *Commonwealth v. Hower,* 267 Pa. Super. 182, 406 A.2d 754 (1979). Although McKenzie testified as to his opinion of Defendant's capability to drive safely, he was not offered as an expert witness in the case. In fact, a lay witness, without specialized knowledge or experience, may give opinion testimony as to whether a person is under the influence of alcohol to the extent he is incapable of safe driving. *Commonwealth v. Neiswonger,* 338 Pa. Super 625, 488 A.2d 68 (1985). Thus, McKenzie would not have had to be qualified as an expert to give this opinion.

Accordingly, we find that the presence of these officers during the entire trial was not "reasonably necessary" to help the prosecution to prove the charges upon which defendant was found guilty, and arose to nothing more than usual services provided by police

officers to the Commonwealth. We will, therefore, deny Commonwealth's petition to assess restitution.

## ORDER

And now, December 18, 1992, consistent with the foregoing memorandum, the commonwealth's petition to assess restitution is denied.